UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

In re the Matter:

David C. Bookstaff,

       Debtor.

Bankruptcy Case No. 3-10-12389-rdm

Brandon Scholz
814 Ondossagon Way
Madison, WI  53719,

       Plaintiff,

  v.

Adversary Proceeding No. _____

David C. Bookstaff
P.O. Box 353
New Glarus, WI  53574

       Defendant.

## COMPLAINT

Plaintiff, Brandon Scholz, by and through his attorneys, Krekeler Strother, S.C., as and for his Complaint Objecting to Dischargeability of Indebtedness against David C. Bookstaff, alleges and complaint as follows:

1.   Plaintiff, Brandon Scholz, the Plaintiff, is a Wisconsin resident whose address is 814 Ondossagon Way, Madison, WI  53719.

2.   Defendant, David C. Bookstaff, the Debtor herein, is a Wisconsin resident whose address is P.O. Box 353, New Glarus, WI  53574.

3.   Defendant filed a voluntary chapter 7 case on March 30, 2010 (the "Petition Date").

4. This adversary proceeding seeks a determination that the Defendant is not entitled to a discharge of certain debts owed to the Plaintiff.

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. § 523.

6. This adversary proceeding is a core proceeding as defined by 28 U.S.C. §157. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## FACTUAL ALLEGATIONS

7. On or around April 7, 2008, Brandon Scholz ("Scholz"), Defendant/Debtor David L. Bookstaff ("Bookstaff"), Gary L. Mobley, Jr ("Mobley") and others (collectively the "Members"), entered into an operating agreement forming a Wisconsin limited liability company, Oregon Real Estate Venture, d/b/a 1150 Park LLC, whose principal purpose was "to acquire, hold, lease and/or dispose of the real property located at 1150 Park Street, Oregon, Wisconsin.

8. All members agreed to sign personal guarantees to secure a business note needed to purchase the property with the limited or unlimited personal guaranty serving as each member's capital contribution.

9. The Operating Agreement provided that Bookstaff would serve as managing member of the company, with authority "to perform any and all acts or activities reasonably customary or incidental to the management of the Company's business... [and] sign all agreements, contracts, and other instruments or documents that are necessary or appropriate in the course of the Company's regular business..."

10. On or about April 11, 2008, 1150 Park LLC ("1150 Park"), a Wisconsin limited liability company located at 1150 Park Street, Oregon, Wisconsin,

owning real estate from which Hawthorn's Dining and Celebrations, LLC ("Hawthorns"), duly made, executed and delivered to Union Bank & Trust Company (the "Bank"), a Business Note in the original principal amount of $1,480,000. A true and correct copy of the Note is attached hereto as Exhibit A and made a part of this Complaint as though fully set forth herein.

11. Prior to guaranteeing, Bookstaff represented to the other members that he would also provide an unlimited Personal Guarantee of the contemplated initial bank loan with the Bank, but he never provided such unlimited guarantee to the Bank.

12. The Operating Agreement provided that the expected capital contribution for both Scholz and Mobley would be a "$200,000 Limited Personal Guarantee of initial bank loan", each then having an equal interest in the Company.

13. On or about April 10, 2008, Plaintiff Scholz relying on the representations of Bookstaff gave the Bank a Continuing Guaranty (Limited) guaranteeing up to $200,000 of the amount due pursuant to the Note, a true and correct copy of which is attached hereto as Exhibit B.

14. Scholz subsequently discovered that Bookstaff prepared a document entitled "Addendum to Operating Agreement of Oregon Real Estate Ventures, LLC Buyout Agreement Between Oregon Real Estate Venture, LLC and Gary Mobley" (the "Addendum"), a copy of which is attached as Exhibit C.

15. The Addendum was never delivered to Scholz, though a signature on the Addendum purports to be that of Scholz and upon information and belief is a forgery made by Bookstaff.

16. Upon information and belief, other signatures on the Addendum are also forgeries, although the signatures of Mobley and Bookstaff may be valid.

17. The Addendum purportedly dated April 29, 2008, provided that the Company agreed to repurchase the interest of Gary Mobley and further secure the release of his personal guaranty dated April 10, 2008 within 30 days and that all members agreed to take reasonable action and provide substitute security/collateral.

18. Upon information and belief Bookstaff had promised to limit Mobley's liability and capital contribution and that such guaranty would expire and otherwise be wholly released after six months.

19. Upon information and belief the Continuing Guarantee (Limited) that the Bank purports was executed by Mobley, contained pertinent language blacked out and failed to indicate that the Addendum had been executed.

20. Scholz denies any knowledge of the Addendum and indicates that he had been told by Bookstaff that he would be treated the same as Mobley since they each had an equal interest in the company.

21. Scholz further alleges Bookstaff specifically represented to him that 5 people would guarantee the Bank's Note and the Addendum was never communicated by Bookstaff.

22. Scholz denies he would have personally guaranteed or engaged in the venture had he known that Mobley, Bookstaff and all other members would not be personally guaranteeing the Note with the Bank or would be released from their guarantees.

23. Bookstaff failed to provide this pertinent information to Scholz either before or after Scholz had signed the Operating Agreement or signed the $200,000 personal guarantee, and failed to provide a fully-executed copy of the Operating Agreement to Scholz as required or a copy of the Addendum.

24. Scholz alleges that while the Company was operating, he repeatedly asked Bookstaff for the monthly finance reports as required in the Operating Agreement, but Bookstaff failed to produce them.

25. During the term of the loan, Scholz specifically inquired as to whether payments were being made to the bank, and Bookstaff falsely declared that they were.

26. Upon information and belief, Bookstaff falsified an email from an agent of the Bank that demonstrated the loan was in good standing and produced the email to Scholz when Scholz demanded proof that payments were being timely made.

27. 1150 Park subsequently failed to comply with the terms and conditions of the Note by failing to make payments when due pursuant to the Note.

28. The Bank subsequently filed a lawsuit in Dane County Circuit Court, Case No. 09 CV 3414 against Plaintiff Scholz and others based on their personal guarantees.

29. Plaintiff Scholz answered and filed a Third-Party Complaint against defendant, Bookstaff, with a judgment of $190,000 later entered on March 23, 2010, in favor of Plaintiff Scholz and against debtor/defendant Bookstaff.

30. Upon information and belief and a review of the circuit court records for Dane County Case No. 09 CV 3414 indicate that both Scholz and Bookstaff were represented by counsel.

31. A copy of the Findings of Fact, Conclusions of Law and Order for default judgment was signed by the Honorable Daniel Moeser, Dane County Circuit Court Judge, Branch 11, was signed on February 22, 2010.

32. A hearing in the matter regarding damages was held on March 15, 2010, with Findings of Fact, Conclusions of Law and an Order for Judgment in the total amount of $190,000 was signed by Judge Moeser on March 23, 2010, and entered accordingly.

ACTIONS GIVING RISE TO COMPLAINT

Denial of Dischargeability Pursuant 11 U.S.C. § 523(a)

33. Plaintiff realleges and incorporates Paragraphs 1 through 32 above as though fully set forth herein.

34. Defendant Bookstaff made material misrepresentations to obtain Scholz capital contribution and personal guaranty on behalf of the Company, which Scholz reasonably relied upon, including but not limited to the capital contributions of each member.

35. Scholz relied on misrepresentations made by Defendant regarding the status of the loan payments, including Scholz' reasonable reliance upon a fictitious email presented by Defendant Bookstaff to convince Scholz the loan was in good standing.

36. Defendant, as managing member of the Company, willfully and intentionally used monies for purposes other than the payment of items necessary to perform acts or activities reasonably customary or incidental to the management of the Company's business, including but not limited to, servicing the loan, thus breaching his fiduciary duty owed to Plaintiff.

37. Upon information and belief the defendant's acts of deception commenced with discussions of formation of the Company, with the plan and intent to use the Companies monies to pay off debt in other business entities owned and/or

operated by the defendant, as evidenced by a letter believed to be written by the defendant.

38. Defendant, as managing member of the Company, willfully and intentionally used monies intended for the servicing of the loan without the consent of Plaintiff and contrary to Defendant's authority.

39. Upon information and belief, Defendant willfully and intentionally converted the trust fund monies to be paid to Plaintiff for his own use or for a business purpose unrelated to the Company.

40. Defendant's willful and malicious failure to make payment on the loan seriously interfered with Plaintiff's right by jeopardizing his capitalization of the Company and Scholz' responsibilities regarding repayment of the loan.

41. Defendant's actions demonstrate his willful and malicious injury to Plaintiff's right to protect his capital contribution in the Company and pay the loan secured by Plaintiff's personal guaranty.

42. As a direct and proximate result of Defendant's foregoing actions, Plaintiff has suffered damages, including but not limited to pecuniary losses, in the amount of $190,000 plus interest at the rate of 12% annum since March 23, 2010.

43. Defendant filed a petition under Chapter 7 of the Bankruptcy Code on or about April 24, 2006.

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

A. For an order determining the obligation of Defendant to Plaintiff be nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(4) and/or (6);

B. For a money judgment in the amount of $190,000.00, plus interest accrued since March 23, 2010, at the rate of 12% per annum, as prejudgment interest;

C.   For Plaintiff's costs and disbursements incurred in this action including allowable attorneys' fees; and

D.   For such other and further relief as the Court deems just and equitable.

Dated this *1st* day of July, 2010.

KREKELER STROTHER, S.C.

*Rose M. Yanke*

Filed electronically by: */s/ Rose Yanke*
        J. David Krekeler
        State Bar No. 1011125
        Rose M. Yanke
        State Bar No. 1002619
        Attorneys for Plaintiff,
        Brandon Scholz

ADDRESS:
15 N. Pinckney Street, Suite 200
P.O. Box 828
Madison, WI 53701-0828
(608) 258-8555
(608) 258-8299–Fax

Loan Number: 303908
BUSINESS

© 2005 Wisconsin Bankers Association / Distributed by FIPCO®

## BUSINESS NOTE
(Use only for business purpose loans)

Boxes checked are applicable.
Boxes not checked are inapplicable.

1150 PARK, LLC _____   April 11, 2008 _____   $ 1,450,000.00 _____
(MAKER)                                    (DATE)

1. Promise to Pay and Payment Schedule. The undersigned ("Maker," whether one or more) promises to pay to the order of
Union Bank & Trust Company _____ ("Lender") at 2 E. Main St _____
Evansville _____ , Wisconsin, the sum of $ 1,480,000.00 _____ , plus interest on the unpaid principal
balance, according to the following schedule:
3 payments consisting of accrued interest beginning on May 1, 2008 and continuing monthly thereafter.
And 239 equal payments consisting of principal and interest, in the amount of $11,253.39 each, beginning on August
1, 2008 and continuing monthly thereafter, and one final payment consisting of the unpaid principal and all accrued
interest remaining due on July 1, 2028.

2. Interest Calculation. This Note bears interest on the unpaid principal balance before maturity:
[Check (a), (b) or (c); only one shall apply.]
(a) ☐ Fixed Rate. At the rate of ___n/a___ % per year.
(b) ☐ Stepped Fixed Rate. At the rate ("Note Rate") of ___n/a___ % per year until _____n/a_____ and ___n/a___ % per year thereafter.
(c) ☒ Variable Rate. At the annual rate ("Note Rate") which shall equal the Index Rate (as defined below). ☒ plus ☐ minus _____1.500_____
percentage points. However, the Note Rate shall not exceed ___n/a___ % per year and shall not be less than ___n/a___ % per year, and until the first
change date described below the Note Rate shall be __6.750__ % per year. The Note Rate shall be adjusted as provided below. The Index Rate is:
The highest U.S. Prime Rate as published in the Wall Street Journal. _____

The Index Rate may or may not be the lowest rate charged by Lender. The Note Rate shall be adjusted only on the following change dates:
as and when the index changes, beginning April 1, 2011. _____

If the Index Rate ceases to be made available to Lender during the term of this Note, Lender may substitute a comparable index.
(d)   If box (b) or (c) is checked, an adjustment in the Note Rate will result in an increase or decrease in (1) ☐ the amount of each payment of interest,
(2) ☐ the amount of the final payment, (3) ☐ the number of scheduled periodic payments sufficient to repay this Note in substantially equal
payments, (4) ☒ the amount of each remaining payment of principal and interest so that those remaining payments will be substantially equal and
sufficient to repay this Note by its scheduled maturity date, (5) ☐ the amount of each remaining payment of principal and interest (other than the
final payment) so that those remaining payments will be substantially equal and sufficient to repay this Note by its scheduled maturity date based on
the original amortization schedule used by Lender, plus the final payment of principal and interest, or (6) ☐ n/a _____
_____
In addition, Lender is authorized to change the amount of periodic payments if and to the extent necessary to pay in full all accrued interest owing on
this Note. The Maker agrees to pay any resulting payments or amounts.
Interest is computed:
(e) ☒ For the actual number of days principal is unpaid on the basis of ☒ a 360 day year (which means that the stated interest rate will be divided by 360
days to arrive at a daily interest rate, and the daily interest rate will be applied to the unpaid principal for the actual number of days principal is unpaid up
to 365 days in a calendar year and 366 days in a leap year) ☐ a 365 day year.
(f) ☐ For the number of days principal is unpaid on the basis of a 360 day year, counting each day as 1/30th of a month and disregarding differences in
lengths of months and years.
(g) ☐ Past due interest shall bear interest from its due date until paid at the interest rate then in effect for this Note.
Unpaid principal and interest bear interest after maturity until paid (whether by acceleration or lapse of time) at the rate(s) ☒ stated under 2(b) or (c)
above, as applicable, plus __3.000__ percentage points ☐ of ___n/a___ % per year, computed on the same basis as the interest rate before maturity. All
payments shall be applied first to accrued and unpaid interest, second to other charges payable by Maker to Lender and third to unpaid principal.
3. Other Charges. If any payment (other than the final payment) is not made on or before the __10th__ day after its due date, Lender may collect a
delinquency charge of ☒ __5.00__ % of the unpaid amount ☐ $ n/a _____
for each check presented for payment under this Note which is returned unsatisfied. _____ Maker agrees to pay a charge of $ 15.00 _____
4. Prepayment. Full or partial prepayment of this Note ☒ is permitted at any time without penalty ☐ n/a _____
n/a _____

All prepayments shall be applied first to accrued and unpaid interest, second to other charges payable by Maker to Lender and third to principal.
THIS NOTE INCLUDES ADDITIONAL PROVISIONS ON PAGE 2.

OTHER PROVISIONS:

1150 PARK, LLC _____ (SEAL)
A Wisconsin Limited Liability Company _____
(Type of Organization)

By: _____
DAVID C. BOOKSTAFF, Manager _____

By: _____ (SEAL)

By: _____

874 SOUTH WHITNEY WAY _____

MADISON, WI 53711-1735 _____ ()_____
(ADDRESS)

EXHIBIT
A
tabbies®

ADDITIONAL PROVISIONS

**5. Default and Enforcement.** Upon the occurrence of any one or more of the following events of default: (a) Maker fails to pay any amount when due under this Note or under any other instrument evidencing any indebtedness of Maker to Lender, (b) any representation or warranty made under this Note or information provided by Maker to Lender in connection with this Note is or was false or fraudulent in any material respect, (c) a material adverse change occurs in Maker's financial condition, (d) Maker fails to timely observe or perform any of the covenants or duties contained in this Note, (e) any guarantee of Maker's obligations under this Note is revoked or becomes unenforceable for any reason, (f) Maker, Maker's spouse or a surety or guarantor of this Note dies or ceases to exist, (g) an event of default occurs under any agreement securing this Note, or (h) Lender at any time believes in good faith that the prospect of payment or performance under this Note, under any other instrument evidencing any indebtedness of Maker to Lender or under any agreement securing this Note is impaired, then the unpaid balance shall, at the option of Lender, without notice, mature and become immediately payable. The unpaid balance shall automatically mature and become immediately payable in the event any Maker or any surety, indorser or guarantor for any of Maker's obligations under this Note becomes the subject of bankruptcy or other insolvency proceedings. Lender's receipt of any payment on this Note after the occurrence of an event of default shall not constitute a waiver of the default or the Lender's rights and remedies upon such default. To the extent not prohibited by law, Maker consents that venue for any legal proceeding relating to collection of this Note shall be, at Lender's option, the county in which Lender has its principal office in this state, the county in which any Maker resides or the county in which this Note was executed and Maker submits to the jurisdiction of any such court.

**6. Security.** This Note is secured by all existing and future security agreements and mortgages between Lender and Maker, between Lender and any indorser or guarantor of this Note, and between Lender and any other person providing collateral security for Maker's obligations, and payment may be accelerated according to any of them. Unless a lien would be prohibited by law or would render a nontaxable account taxable, Maker grants to Lender a security interest and lien in any deposit account Maker may at any time have with Lender, Lender may, at any time after an occurrence of an event of default, without notice or demand, set-off against any deposit balances or other money now or hereafter owed any Maker by Lender any amount unpaid under this Note.

**7. Rights of Lender.** Without affecting the liability of any Maker, indorser, surety, or guarantor, Lender may, without notice, accept partial payments, release or impair any collateral security for the payment of this Note or agree not to sue any party liable on it. Lender may apply prepayments, if permitted, to such future installments as it elects. Lender may without notice to Maker apply payments made by or for Maker to any obligations of Maker to Lender. Without affecting the liability of any indorser, surety or guarantor, Lender may from time to time, without notice, renew or extend the time for payment.

**8. Obligations and Agreements of Maker.** The obligations under this Note of all Makers are joint and several. All Makers, indorsers, sureties, and guarantors agree to pay all costs of collection before and after judgment, including reasonable attorneys' fees (including those incurred in successful defense or settlement of any counterclaim brought by Maker or incident to any action or proceeding involving Maker brought pursuant to the United States Bankruptcy Code) and waive presentment, protest, demand and notice of dishonor. Maker agrees to indemnify and hold harmless Lender, its directors, officers, employees and agents, for, from and against any and all claims, damages, judgments, penalties, and expenses, including reasonable attorneys' fees, arising directly or indirectly from credit extended under this Note or the activities of Maker. This indemnity shall survive payment of this Note. Each Maker acknowledges that Lender has not made any representations or warranties with respect to, and that Lender does not assume any responsibility to Maker for, the collectability or enforceability of this Note or the financial condition of any Maker. Each Maker has independently determined the collectability and enforceability of this Note. Maker represents that the legal name of Maker and the address of Maker's principal residence are as set forth on page 1. Maker shall not change its legal name or address without providing at least 30 days prior written notice of the change to Lender.

**9. Interpretation.** This Note is intended by Maker and Lender as a final expression of this Note and as a complete and exclusive statement of its terms, there being no conditions to the enforceability of this Note. This Note may not be supplemented or modified except in writing. This Note benefits Lender, its successors and assigns, and binds Maker and Maker's heirs, personal representatives, successors and assigns. The validity, construction and enforcement of this Note are governed by the internal laws of Wisconsin except to the extent such laws are preempted by federal law. Invalidity or unenforceability of any provision of this Note shall not affect the validity or enforceability of any other provisions of this Note.

| INTEREST PAID TO | | | | | | | |
|---|---|---|---|---|---|---|---|
| MO. | DAY | YR. | DATES PAID | INITIALS | INTEREST | PRINCIPAL | BALANCE DUE |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

© 2007 Wisconsin Bankers Association / Distributed by FIPCO

**CONTINUING GUARANTY (Limited)**
(For Consumer or Business Transactions)

Boxes checked are applicable.
Boxes not checked are inapplicable.

Dated April 10, 2008

**GUARANTY.** For value received, and to induce Union Bank & Trust of Evansville, WI ("Lender"), to extend credit or to grant or continue other credit accommodations to 1150 Park LLC /Oregon Real Estate Venture LLC ("Debtor"), subject to the limitations set forth below, the undersigned ("Guarantor," whether one or more) jointly and severally guarantees payment of the Obligations defined below when due or, to the extent not prohibited by law, at the time any Debtor becomes the subject of bankruptcy or other insolvency proceedings. "Obligations" means all loans, drafts, overdrafts, checks, notes, and all other debts, obligations and liabilities of every kind and description, whether of the same or a different nature, arising out of credit previously granted, credit contemporaneously granted or credit granted in the future by Lender to Debtor, to Debtor and another, or to another guaranteed or endorsed by Debtor. Obligations include interest and charges and the amount of payments made to Lender or another by or on behalf of Debtor which are recovered from Lender by a trustee, receiver, creditor or other party pursuant to applicable federal or state law, and to the extent not prohibited by applicable law, including, without limitation, the Wisconsin Consumer Act, if applicable, all costs, expenses and attorneys' fees at any time paid or incurred before and after judgment in endeavoring to collect all or part of any of the above, or to realize upon this Guaranty, or any collateral securing any of the above, including those incurred in successful defense or settlement of any counterclaim brought by Debtor or Guarantor or incident to any action or proceeding brought pursuant to the United States Bankruptcy Code ("costs of collection"). Unless a lien would be prohibited by law or would render a nontaxable account taxable, Guarantor grants to Lender a security interest and lien in any deposit account Guarantor may at any time have with Lender. Lender may, at any time after the occurrence of an event of default with respect to any Obligation and notice and opportunity to cure, if required by §425.105, Wis. Stats., set-off any amount unpaid on such Obligation against any deposit balances Guarantor may at any time have with Lender, or other money now or hereafter owed Guarantor by Lender. This Guaranty is also secured (to the extent not prohibited by law) by all existing and future security agreements between Lender and Guarantor and by any mortgage stating it secures guaranties of Guarantor. This Guaranty is valid and enforceable against Guarantor even though any Obligation is invalid or unenforceable against Debtor.

**WAIVER.** To the extent not prohibited by applicable law, including, without limitation, the Wisconsin Consumer Act, if applicable, Guarantor expressly waives (a) notice of the acceptance of this Guaranty, the creation of any present or future Obligation, default under any Obligation, proceedings to collect from Debtor or anyone else, (b) all diligence of collection and presentment, demand, notice and protest, (c) any right to disclosure from Lender regarding the financial condition of any Debtor or guarantor of the Obligations or the enforceability of the Obligations, and (d) all other legal and equitable surety defenses. No claim, including a claim for reimbursement, subrogation, contribution or indemnification which Guarantor may, as a guarantor of the Obligations, have against a co-guarantor of any of the Obligations or against Debtor shall be enforced nor any payment accepted until the Obligations are paid in full and no payments to or collections by Lender are subject to any right of recovery.

**CONSENT.** To the extent not prohibited by applicable law, including, without limitation, the Wisconsin Consumer Act, with respect to any of the Obligations, Lender may from time to time before or after discontinuance of this Guaranty without notice to Guarantor and without affecting the liability of Guarantor (a) surrender, release, impair, sell or otherwise dispose of any security or collateral, (b) release or agree not to sue any guarantor or surety, (c) fail to perfect its security interest in or realize upon any security or collateral, (d) fail to realize upon any of the Obligations or to proceed against the Debtor or any guarantor or surety, (e) renew or extend the time of payment, (f) increase or decrease the rate of interest, (g) accept additional security or collateral, (h) determine the allocation and application of payments and credits and accept partial payments, (i) apply the proceeds of disposition of any collateral for the Obligations to any obligation of Debtor secured by such collateral in such order and amounts as it elects, (j) determine what, if anything, may at any time be done with reference to any security or collateral, and (k) settle or compromise the amount due or owing or claimed to be due or owing from any Debtor, guarantor or surety, which settlement or compromise shall not affect Guarantor's liability for the full amount of the Obligations except as expressly limited by this Guaranty. Guarantor expressly consents to and waives notice of all of the above. To the extent not prohibited by law, Guarantor consents that venue for any legal proceeding relating to the collection of this Guaranty shall be, at Lender's option, the county in which Lender has its principal office in this state, the county in which any Guarantor resides or the county in which this Guaranty was executed by the Guarantor. Guarantor consents to and authorizes Lender or its agents to obtain information concerning Guarantor's financial condition, including credit reports.

**PERSONS BOUND.** This Guaranty benefits Lender, its successors and assigns, and binds Guarantor, and Guarantor's respective heirs, personal representatives, successors and assigns. This Guaranty shall continue in full force and effect notwithstanding any change in structure or status of Debtor, whether by merger, consolidation, reorganization or otherwise. This Guaranty includes additional provisions on page 2.

---

**NOTICE TO GUARANTOR**

You are being asked to guarantee a limited amount of the past, present and future Obligations of Debtor. If Debtor does not pay, you will have to. You may also have to pay collection costs. Lender can collect the Obligations from you without first trying to collect from Debtor or another guarantor or proceeding against collateral or other security for the Obligations.

---

**LIMITATIONS.** The amount of liability under this Guaranty is limited to ☒ _____ % of all Obligations ☐ $ 200,000.00 plus costs of collection.

X _____ (SEAL)
Brandon Scholz
(Type of Organization) Director/Member

X _____ (SEAL)
Term Expires 2/14/12

_____ (SEAL)

_____ (SEAL)

X 814 ONDOSSAGON WAY, MADISON, WI 53719
(Address)

---

For Wisconsin Married Residents Only: Each Guarantor who signs below represents that this obligation is incurred in the interest of his or her marriage or family.

X _____     X _____

---

**FOR LENDER CLERICAL USE ONLY**

If any transaction guaranteed is a consumer transaction or subject to the Federal Reserve Regulation AA ("Reg AA"), each guarantor should also sign a Consumer WBA 155 "Explanation of Personal Obligation." Additionally, if the guaranty is not subject to Reg AA, the guarantor may receive copies of documents which evidence the customer's obligation to pay.

Acknowledgment of signature on page 2.

Copies of documents or WBA 155 may be required...... ☐ Documents Delivered; or ☐ 155 Delivered



**EXHIBIT**
B
tabbies®



© 2008 Wisconsin Bankers Association / Distributed by FIPCO®

## SPOUSAL CONSENT

My spouse has agreed or may agree with you to personally guarantee payment of the obligations of *Oregon Real*

*Estate Venture LLC*

to you. I consent to this act by my spouse and acknowledge that I am acting together with my spouse, but by signing below I am not becoming

personally liable as a guarantor for the payment of obligations of the other person.

Dated __4/10/08__                    X _____*Carla Scholz*_____
                                         (Signature of Spouse)
                                     _____*Carla Scholz*_____
                                         (Type Name Signed Above)

### Addendum to Operating Agreement of Oregon Real Estate Ventures, LLC
### Buyout Agreement Between Oregon Real Estate Venture, LLC and Gary Mobley:

It is further resolved that Oregon Real Estate Venture, LLC agrees to repurchase all of the interest of Gary Mobley and further secure the release of his Personal Guaranty, dated April 10, 2008, given to Union Bank & Trust, Evansville, Wisconsin, in the amount of $200,000.00, no later than thirty days following the written demand to purchase said interests of Gary Mobley, provided such written demand is made not earlier than October 10, 2008. Oregon Real Estate Venture, LLC, and all members other than Gary Mobley, agree to take all reasonable action and provide substitute, adequate security and/or collateral, as Union Bank & Trust may require, including additional personal Guaranties from other members, as Union Bank & Trust may require in order to release the Personal Guaranty of Gary Mobley. If said demand for repurchase of shares occurs within thirty days of October 10, 2008, the purchase price for said shares shall be based on the appraised value of the real estate located at 1150 Park Street, Oregon, Wisconsin, in the amount of $1,850,000.00. If the demand for repurchase occurs after November 10, 2008, and the parties cannot agree to a repurchase price, the Company shall obtain a new or updated appraisal prepared by an appraiser certified in commercial real estate appraisals, which shall be used as the new value of the Real Estate for purposes of determining the repurchase price.

In the event that Gary Mobley has paid amounts to Union Bank & Trust pursuant to his Guaranty of the debts of Oregon Real Estate Venture, LLC greater than his proportionate share as set forth in the Operating Agreement, at the time of payment for his repurchased interest in the Company such amounts, if any, greater than his proportionate share shall be paid to him in addition to the amount due for the repurchase of his Company interest.

OREGON REAL ESTATE VENTURES, LLC

By: _____   Date: _4/29/08_____
David C. Bookstaff, Manager

By: _____   Date: _4/29/08_____
Geoffrey Sandler

By: _____   Date: _4/29/08_____
Richard Becker

By: _____   Date: _4/29/08_____
Brian Bookstaff

**EXHIBIT**

_C_

By: _____ Date: 4/29/07

Brandon Scholz

By: _____ Date: _____

Gary Mobley

STATE OF WISCONSIN )
) ss.
_____ COUNTY)

Personally came before me on 4/29/08 _____ the above-named Gary Mobley, to me known to be the person(s)
who executed the foregoing instrument and acknowledged the same.

_____

Roy D. Kesel
Notary Public, State of Wisconsin
My commission (is permanent)(expires) _____

\\Dallserver\wp5dos\DCMobley, Ch\\Addendm to Operating Agreement.wpd